UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


JOHN TRACY DAVIS,                          )
               Petitioner,        )
                         )
v.                                         )        NO. 2:06-CR-11
                         )        NO. 2:10-CV-60
                         )
UNITED STATES OF AMERICA,                  )
               Respondent.      )


**<u>MEMORANDUM OPINION AND ORDER</u>**

      This matter is before the Court on John Tracy Davis's ("Petitioner" or "Davis") "Motion

Under 28 U.S.C. § 2255 To Vacate or Set Aside Sentence by a Person In Federal Custody," [Doc.

185], and his amended motion, [Doc. 193]. Shortly after the filing of the motion, petitioner filed the

declarations of six individuals in support of his motion, [Doc. 189-1-6], a facsimile copy of his own

declaration, [Doc. 190-1], and a motion for leave to file his supplemental declaration, [Doc. 192].

Since the motion did not comply with Rule 2(b)(2) of the Rules Governing Section 2255

Proceedings For The United States District Courts, ("Governing Rules"),  petitioner was ordered to

file a brief setting out fully the legal and factual bases for his claims, [Doc. 186], and the supporting

brief was filed about two and one-half months later, [Doc. 194]. Since then, petitioner has filed his

further supplemental declaration, [Doc. 202-1], additional witness declarations, [Doc. 201, 206], and

his second, [Doc. 205], and third, [Doc. 210], declarations.

      The United States has responded to the motion and amended motion, [Doc. 215], and

petitioner has replied, [Docs. 220, 221]. Along with his replies, petitioner has moved the Court "to

conduct a status conference to discuss need for discovery and additional declarations, whether the

record should be expanded, and whether an evidentiary hearing is warranted." No good cause exists for additional discovery or expanding the record and petitioner has not provided reasons for the requests, see Rule 6(b) and 7 of the Governing Rules. Further, because it plainly appears from the motion and supporting brief, the attached exhibits and declarations, and the record of prior proceedings that Davis is not entitled to an evidentiary hearing,[1] and is not entitled to relief, the motion for a status conference will be DENIED, the motion and amended motion to vacate will be DENIED, and the case will be DISMISSED.

## I. Procedural Background

Davis, Aldifonso Gonzales, Jr. ("Gonzales") and Johnny Joseph Fachorn, Jr. ("Fachorn") were indicted by the federal grand jury on April 11, 2006, on charges of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C §§ 846, 841(a)(1) and 841(b)(1)(A) (Count One-Davis, Gonzales and Fachorn); conspiracy to distribute and possess with the intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A) (Count Two-Davis, Gonzales and Fachorn); attempt to possess with the intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A) (Count Three-Davis, Gonzales and Fachorn); possession of

---

[1] "In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of petition's claims' [and] 'the burden on the petitioner in a *habeas* case for establishing an entitlement to an evidentiary hearing is relatively light.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (citing *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). Davis does not explicitly argue that an evidentiary hearing is necessary in this case.

An evidentiary hearing is not required if the record conclusively shows that the petitioner is entitled to no relief, as when "the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine*, 488 F.3d at 333 (citing *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Because the existing record conclusively establishes that Davis is not entitled to relief on any ground, an evidentiary hearing is not necessary in the case.

a firearm in furtherance of a drug trafficking crime, *i.e.* Count Three, in violation of 18 U.S.C. § 924(c)(1) (Count Four-Davis); possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count Five-Davis); distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Counts Six and Eight-Davis); and distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count Seven), [Doc. 1]. A superseding indictment returned June 13, 2006, made technical corrections to the indictment and restated the charges, [Doc. 27].

On June 14, 2006, the government filed an information pursuant to 21 U.S.C. § 851(a)(1) giving notice of intent to seek enhanced punishment by reason of Davis's prior conviction for a felony drug offense on September 22, 1986, in the United States District Court for the Eastern District of Tennessee in case number 2:86-CR-20, *i.e.* the felony offense of conspiracy to possess with the intent to distribute and to distribute approximately 791 grams of cocaine, [Doc. 31]. By agreement of the parties, Counts Six, Seven and Eight were dismissed on July 28, 2006, [Doc. 61]. On July 29, 2006, the government gave notice of its intent to offer evidence of the prior 1986 conviction and the seizure of cocaine, cash and digital scales in petitioner's residence in Sarasota, Florida, on May 16, 2006, at the time of his arrest in the instant case, pursuant to Federal Rule of Evidence 404(b) [Doc. 63].

In October, 2006, Gonzales and Fachorn pled guilty to Count One pursuant to negotiated plea agreements, [Docs. 69, 76], and agreed to testify at petitioner's trial. After a four day trial, Davis was convicted by the jury as to Counts One, Three and Five and found not guilty as to Counts Two and Four, [Doc. 96]. Davis was sentenced on March 19, 2007, to the mandatory minimum of 240 months imprisonment, [Doc. 139], and judgment was entered on March 22, 2007, [Doc. 141]. Davis appealed the Court's judgment to the Sixth Circuit Court of Appeals, [Doc. 140], and the

conviction and sentence were affirmed by the Sixth Circuit on November 12, 2008, [Doc. 158].

*United States v. Davis*, 300 Fed. App'x 393 (6th Cir. 2008).  The instant motion to vacate was then

timely filed on March 19, 2010.

## II.  Standard of Review

This Court must vacate and set aside petitioner's  sentence if it finds that "the judgment was

rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise

open to collateral attack, or that there has been such a denial or infringement of the constitutional

rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ."  28 U.S.C. §

2255.   Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of

the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the

movant is not entitled to relief.  If it plainly appears the movant is not entitled to relief,  the court

may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief.

*Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th

Cir. 1961).  "Conclusions, not substantiated by allegations of fact with some probability of verity,

are not sufficient to warrant a hearing."  *O'Malley*, 285 F.2d at 735 (citations omitted).  A motion

that merely states general conclusions of law without substantiating allegations with facts is without

legal merit.  *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940

F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be

one of constitutional magnitude which had a substantial and injurious effect or influence on the

proceedings.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case);

*Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland* 466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective

assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F. 2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized that both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive

to ensure that ineffectiveness claims not become so burdensome to
defense counsel that the entire criminal justice system suffers as a
result.

*Id.* at 697.

### III.   Analysis  and Discussion

Davis, in his original motion, raises two broad claims for relief pursuant to 28 U.S.C. § 2255:

(1) ineffective assistance of counsel (IAC), and (2) violation of the government's *Brady* obligation.

With respect to his claims of IAC, he specifically alleges forty-four omissions or actions on the part

of counsel which he claims "failed below an objective standard of reasonableness, were not the

result of a legitimate strategy, and constitutionally prejudiced Davis' case."

### A.        IAC

As noted above, Davis did not develop any legal argument related specifically to each of the

forty- four separate allegations of IAC or state the facts supporting each ground and was ordered by

the Court to file a memorandum in support of the motion setting out the legal and factual bases for

each claim.   In his supporting brief, Davis appears to have abandoned many of these specific

conclusory allegations of IAC and has instead attempted to develop five claims: (1) IAC for failure

to suppress evidence seized from the May 16, 2006 search of petitioner's Florida residence; (2) IAC

for failure to properly advise Davis relative to the strength of the government's case, especially in

light of the agreement of Gonzales and Fachorn to testify against Davis; (3) IAC for pursuing an

unreasonable defense strategy which opened the door to introduction of evidence under Federal Rule

of Evidence 404(b); (4) IAC for failing to preserve issues for appellate review; and (5) IAC for

failure to properly advise Davis about, and advocate for,  "safety valve" relief.[2]   To the extent any

---

[2]    The government in its response categorizes petitioner's claims as "compris[ing] five core issues," a
characterization petitioner does not dispute in his replies.

of the forty-four specific claims of IAC are not developed and the facts supporting each ground not stated, these claims will be summarily denied, *see Green*, 454 F.2d at 53 ("conclusions, not substantiated by allegations of fact with some probability of voracity, are not sufficient to warrant a hearing," much less relief), and the Court will consider petitioner's claims as set out in his supporting brief, [Doc. 194].

### 1.    Search of the Florida Residence

After petitioner's indictment by the federal grand jury here in this district, an arrest warrant was issued by the Clerk.  DEA SA Michael Templeton, the case agent, notified Tampa, Florida based DEA SA Allen Wilson of the warrant and information that Davis could be found at 2312 Mystic Drive in Sarasota, Florida.  On May 16, 2006, Wilson, another federal agent, and officers from the Sarasota Sheriff's Office and Sarasota Police Department went to the residence. After surveillance verification that Davis was in the residence, the officers knocked on the door. Although the officers "heard people talking inside," it was three to five minutes before Davis came to the door.  Wilson and another agent arrested Davis at the door.

The other officers did a security sweep of the residence, encountered Kimberly Shaffer ("Shaffer"), petitioner's girlfriend, coming out of the master bedroom and detained her. While completing the security sweep, the officers observed, in plain view, three baggies with a white powdery substance on the floor of the master bedroom, a green leafy substance on the top of the toilet bowl, and a powdery substance in the water on the bottom of the toilet bowl.  None of the items were seized at that time.  After Davis refused to give consent to search the residence, the officers applied for and received a state search warrant.  Wilson sat with Davis in the livingroom and other officers with Shaffer on the patio while the warrant was being obtained.  The warrant was

executed and the items noted above were seized. The officers also seized $8,439.00 cash and two digital scales from dresser drawers in the master bedroom and a baggie with white powdery substance and a triple beam scale from a second bedroom.

The evidence seized by the agents on May 16, 2006, from petitioner's Florida residence was admitted at trial under Rule 404(b) as probative of petitioner's intent and knowledge and the Court gave a limiting instruction to the jury. On direct appeal, petitioner claimed that the evidence derived from the prospective sweep should have been suppressed pursuant to *Maryland v. Buie*, 494 U.S. 325 (1990). Because no motion to suppress had been filed in the district court, the Sixth Circuit held that Davis had waived his objection on appeal. Petitioner now claims trial counsel was deficient in failing to file a motion to suppress, relying primarily on *Maryland v. Buie* and *United States v. Archibald*, 589 F.3d 289 (6th Cir. 2009). Although somewhat hard to discern, petitioner appears to make two specific arguments: (1) that there was no testimony that the officers perceived themselves to be in danger after Davis was arrested at the door and Shaffer was detained coming from the master bedroom, and (2) that the visual inspection of the toilet bowl exceeded the scope of a permissible protective sweep.

This claim fails for a very simple reason. There was no Fourth Amendment violation and counsel cannot be deficient for failing to file a suppression motion which lacked merit. *See e.g. Brown v. McKee*, 231 Fed. App'x 469, 475 (6th Cir. 2007) ("[t]rial counsel's failure to bring a meritless suppression motion cannot constitute ineffective assistance.") (quoting *United States v. Tisdale*, 195 F.3d 70, 73-74 (2d Cir. 1999)). The Supreme Court held in *Buie* that "arresting officers are permitted . . . to take reasonable steps to ensure their safety after, and while making, the arrest." 494 U.S. at 334. After an arrest, officers may "as a precautionary matter and without probable cause

or reasonable suspicion" look in places "from which an attack could be immediately launched," and may sweep other areas if "articulable facts which, taken together with the rational inferences from these facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.*

Davis argues that the facts in *Archibald* mirror the facts in this case. The Court disagrees. In *Archibald*, the arresting officer, when asked about facts which "would warrant a reasonably prudent officer" to believe that the area to be swept would harbor a dangerous individual simply testified that "we always assume that there could be." 589 F.3d at 292. The Sixth Circuit found that the officer's assumption was insufficient because the record "contained no evidence, circumstantial or otherwise, of the presence of a dangerous third party in Archibald's residence." *Id.* at 292. Because the *Buie* standard requires articulable facts, no rational inference could be made and the protective sweep was not justified. *Id.* at 301-02. Here, the situation was far different. Officers knew Davis was in the residence based on their pre-arrest surveillance, Davis did not answer their knock at his door for three to five minutes, they "heard ***people*** talking inside," and they encountered Shaffer coming from the master bedroom. Unlike the situation in Archibald where officers had nothing to indicate the presence of others in the residence, the officers here ***knew*** of the presence of others. *Id.*, at 300-01 (distinguishing cases where "noises emanating from a residence supported a reasonable to belief" from *Archibald*). These officers possessed specific articulable facts to warrant any "reasonably prudent officer" to believe that the house where Davis was arrested needed to be swept to ensure their safety.

As for petitioner's specific arguments noted above, it is completely irrelevant whether Wilson or any other officer testified that the officers perceived themselves to be in danger after

Davis was arrested. It is simply a question of whether a reasonably prudent officer would have so perceived the situation. In addition, the fact that officers encountered Shaffer coming from the master bedroom is also largely irrelevant. Officers knew "people" were inside the residence. They were not required to assume that Shaffer was the only other person in the house and were fully justified in continuing their sweep of the rest of the house, including the bathroom, the photograph of the bathroom submitted by Davis notwithstanding. Neither that photograph nor petition's affidavit establishes that there "was absolutely no need to go inside the bathroom and look down into the toilet," [Doc. 195 at 5]. When the officers saw, in plain view, the plastic baggies on the floor of the master bedroom, the marijuana on top of the toilet bowl and the beige looking powdery substance on the bottom of the toilet bowl, they were entitled to seize the evidence (or leave it in place and rely on it, at least in part, to obtain a search warrant before seizing it). *See Washington v. Chrisman*, 455 U.S. 1, 5-6 (1982) ("the 'plain view' exception to the Fourth Amendment warrant requirement permits a law enforcement officer to seize what clearly is incriminating evidence or contraband when it is discovered in a place where the officer has a right to be.").

## 2. Unreasonable Advice and Strategy

One thing is certain. The declarations of petitioner, his relatives and friends paint a clear picture of a confident (perhaps over- confident) defense counsel-- confident of his own abilities and confident of the weakness of the government's case. Petitioner does not argue that such confidence is professionally unreasonable; indeed, he could not reasonably do so. He does argue, however, that the "landscape of the case shifted radically" after Gonzales and Fachorn agreed to plead guilty and testify against him. He claims that the impact of these developments was never explained to him and states that "[t]here is no evidence how, if at all, trial counsel shifted or adjusted

11

the theory of defense to account for these significant developments", [Doc. 194 at 9]. Davis asserts that he was prejudiced by the lack of "candid estimates of the strengths and weaknesses of the government's case" because "he was never given an incentive to explore meaningful plea negotiations with the government," [*Id*. at 12]. In his affidavit, he claims that, while no plea offer was ever communicated to him, "he would have wanted to find out if the government would make an agreement that would carry less than 20 years," [Doc. 190-1 at ¶ 21].

        This claim fails for several reasons. First, petitioner acknowledges that there is "no evidence" of how counsel shifted or adjusted the theory of defense. He is correct. There is no evidence and he does not show how some unspecified change in strategy would have resulted in a different outcome. Such undefined claims fall far short of offering any rebuttal, as the government argues, to the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Second, the significance of the decisions of Gonzales and Fachorn to testify for the government should have been obvious even to a layman, especially one with a previous drug conviction. Even if counsel's conduct was deficient, however, petitioner shows no prejudice. As the government asserts, no plea offer was ever extended to petitioner and he was not constitutionally entitled to one. *Lafler v. Cooper*,-- U.S.--, 132 S. Ct. 1376, 1387 (2012). Furthermore, petitioner does not assert that he would have accepted some unknown offer, only that he "would have wanted to find out."

## 3.      Unreasonable Defense Strategy Opening Door to 404(b) Evidence

        With this claim, petitioner attacks counsel's trial strategy as "curious" and opening the door for testimony about massive drug dealing outside the scope of the indictment and inadmissible opinions by agents. He submits that "these claims can only be fully developed at an

evidentiary hearing with an opportunity to question trial counsel," [Doc. 194 at 14].

This claim is a non-starter because petitioner must allege "facts" ***before*** he is entitled to an evidentiary hearing. He fails that threshold and has not properly developed his arguments for habeas review. He has not specifically alleged how counsel's trial strategy was deficient and, even if the testimony by Agent Templeton relied upon by petitioner was somehow improper and responsive to questions of counsel that were unreasonable, petitioner has utterly failed to show how the result of his trial would have been any different were it not for the testimony. The evidence of petitioner's guilt was sufficient, perhaps overwhelming, in light of the testimony of Gonzales and Fachorn, and it is unlikely that these isolated opinions by Templeton would have changed the result of the trial.

This claim by the petitioner also illustrates a misunderstanding of Rule 404(b). Petitioner claims that counsel's questions "opened the door" for the introduction for 404(b) evidence. Federal Rule of Evidence 404(b) provides that evidence of a defendant's "other crimes, wrongs, or acts" may be admitted to establish, *inter alia* or knowledge. Fed. R. Evid. 404(b). Rule 404(b) "is actually a rule of inclusion rather than exclusion, since only one use is forbidden and several permissible uses of such evidence are identified". Thus, Rule 404(b) evidence is admissible as part of the government's case in chief and it is not necessary for a defendant to "open the door" before such evidence can be used.

Where a defendant is charged with a specific intent offense, as here, evidence of his prior bad acts may be admissible under Rule 404(b) for the purpose of proving such intent. *United States v. Love*, 254 Fed. App'x 511, 515 (6th Cir. 2007) (citing *United State v. Myers*, 102 F.3d 227, 234 (6th Cir. 1996)). Thus, evidence of petitioner's prior "massive drug dealing," even outside the

time frame of the indictment, was likely admissible, without counsel opening the door, as probative of petitioner's intent, especially since the prior drug dealing was part of the same scheme as the present offense.

### 4.      Failure to Preserve Issues for Appellate Review

On direct appeal to the Sixth Circuit, petitioner raised four issues reviewed by the Sixth Circuit only for plain error or manifest injustice because the issues were not raised before the district court: (1) Federal Rule of Evidence 702 was violated by Templeton's and Wilson's opinion testimony; (2) the conspiracy charged in Count One was a lesser included offense of Count Three, resulting in impermissible dual convictions and punishment; (3) the indictment did not allege the essential elements of the offense charged in Count Three; (4) sufficiency of the evidence to convict; and (5) the search warrant affidavit for Davis's Tennessee residence failed to establish probable cause. Petitioner alleges that "[l]egal experience teaches that the standard of review is critical to the success or failure of an issue raised" on appeal and trial counsel's testimony at an evidentiary hearing "should help develop these claims more fully."

Once again, petitioner fails to develop these claims sufficiently for habeas review. He makes no effort to demonstrate how he could have prevailed on appeal on any of these issues but for the Sixth Circuit's standard of review. Secondly, with respect to four of those issues (1, 2, 3 and 4), although the Sixth Circuit noted that it reviewed for plain error and/or manifest injustice, it nevertheless proceeded to address the issues on their merits and found them without merit. Finally, even if all these issues were reviewed using the "correct" standard of review, they lack merit. Although it is not necessary to do so, this Court will briefly address the merits of these claims.

### a.      The Testimony of Agents Templeton and Wilson

Although Davis does not specifically identify the testimony he is referring to in his brief (he simply makes the conclusory allegation that the agents were "lay witnesses" who were allowed to give expert opinions in violation of Rule 702), he refers to attachment 29, pages 26-48 and 53-58 generally and the opinion of the Sixth Circuit at page 2-10. It is virtually impossible from these general references to discern what claim petitioner is making. Attachment 29 is petitioner's opening brief to the Sixth Circuit. None of the cited pages relate to this specific issue. Pages 39-44 of the brief do appear to address the issues and that is where the Court will focus its attention.

During his trial testimony, Agent Wilson testified about his background and experience and, based upon that background and experience, about the meaning of the term "fronting" as it relates to drug trafficking. Agent Templeton, the case agent, likewise testified about his background and experience; testified generally about the role of cash in drug trafficking offenses, analogizing the "drug business" to banking; testified that a piece of paper seized from Davis was a recipe for production of approximately one pound of methamphetamine; testified that ten (10) kilograms of cocaine was enough for 100,000 users; and interpreted entries in a drug ledger. Davis claimed that each of these opinions violated Rule 702 and was in reality "expert [opinion] in lay witness clothing," [Doc. 185-29] (quoting *United States v. White*, 492 F.3d 386 (6th Cir. 2007)).

As the Sixth Circuit held in its opinion, courts in this circuit "regularly allow[] qualified law enforcement personnel to testify on characteristics of criminal activity, as long as appropriate cautionary instructions are given, since knowledge of such activity is generally beyond the understanding of the average layman." *Davis*, 300 Fed. App'x at 397 (quoting *United States v. Swafford*, 385 F.3d 1026, 1030 (6th Cir. 2004)). There is no suggestion by petitioner that either

Wilson or Templeton was not qualified to express their opinions and the Court gave a proper cautionary instruction to the jury. This issue lacks merit.

**b.      Double Jeopardy**

As set forth above, Count One of the indictment charged Davis with conspiracy to distribute and possess with the intent to distribute five kilograms or more of cocaine. Count Three charged the substantive drug offense of attempt to possess with the intent to distribute five kilograms or more of cocaine. Petitioner argues now, as he did before the Sixth Circuit, that the conspiracy charge is a lesser included charge of the substantive drug offense charged in Count Three. As a general matter, however, "a substantive crime and a conspiracy to commit that crime are not the 'same offense' for double jeopardy purposes." *United States v. Felix*, 503 U.S. 378, 389 (1992). The Sixth Circuit has specifically ***held*** in this case that "the act of conspiring to possess cocaine is separate and distinct from aiding and abetting the actual attempt to possess the cocaine." *Davis*, 300 Fed. App'x at 398. Since the issue lacks merit, there can be no deficient performance by counsel in failing to preserve it.

**c.      Sufficiency of the Indictment (Count Three)**

Count Three of the indictment charged that "on or about February 17, 2006, within the Eastern District of Tennessee and elsewhere, defendants, JOHN TRACY DAVIS, ALDIFONSO F. GONZALES, JR. AND JOHNNY JOSEPH FACHORN, JR., aided and abetted by each other, did knowingly and intentionally attempt to possess with the intent to distribute five kilograms or more . . . of cocaine, a schedule II controlled substance." [Doc. 27]. Petitioner argues, as he did before the Sixth Circuit, that the indictment fails to allege an essential element of the offense of an attempt, *i.e.* the undertaking of an overt act that was a substantial step toward

committing the underlying offense.  He is wrong.

As the Sixth Circuit noted, the Supreme Court has held that to charge an attempt to commit a criminal act, the indictment "need not specifically allege a particular overt act." *United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007).  *See also United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007).  Once again, there can be no deficient performance by counsel in failing to preserve a meritless issue.

### d.       Sufficiency of the Evidence

Evidence is sufficient to sustain a conviction if "viewing the evidence in the light most favorable to the prosecution, any rational trier of facts could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Even "meager" evidence may be sufficient to establish the elements of the offense "beyond a reasonable doubt." *United States v. Ward*, 190 F.3d 483, 487-88 (6th Cir. 1999), *cert. denied*, 528 U.S. 1118 (2000).  In determining the sufficiency of the evidence, circumstantial evidence and direct evidence are accorded the same weight.  *United States v. Sherlin*, 67 F.3d 1208, 1214 (6th Cir. 1995), *cert. denied*, 516 U.S. 1082 (1996).  The Sixth Circuit has held that even "the uncorroborated testimony of an accomplice may support a conviction under a federal law."  *United States v. Gallo*, 763 F.2d 1504, 1518 (6th Cir. 1985), *cert. denied*, 475 U.S. 1017 (1986).  Determining credibility of witnesses is "exclusively the province of the jury."  *United States v. Bonds*, 22 F.3d 662, 667 (6th Cir. 1994).

Once again, the Sixth Circuit found that, even considering the question under the standard set forth in *Jackson v. Virginia*, "the evidence, when viewed in a light most favorable to the prosecution, would have allowed a rational trier of fact to find the elements of the crime

beyond a reasonable doubt." *Davis*, 300 Fed. App'x at 400. As to Counts One and Three, the testimony of Gonzales alone was sufficient to sustain the convictions. With respect to Count Five, the only element of the offense contested by Davis was his possession of the firearm. The handgun in question was found in the bedside table on the side of the bed where Davis usually slept in the bedroom he and Shaffer shared. Davis owned the whole house. As the Sixth Circuit noted, evidence that Davis "ha[d] dominion over the premises where the firearm is located," is sufficient to establish constructive possession. *Id*. at 401. (quoting *United States v. Hadley*, 431 F.3d 484, 516 (6th Cir. 2005) (citing *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998)).

### e.  Search Warrant Affidavit

Once again petitioner refers to his argument in his brief to the Sixth Circuit to give context to his claim about the search warrant affidavit. The application for a search warrant for both petitioner's residence and his business, A-1 Limousine, was supported by the same omnibus affidavit of Agent Templeton. The Sixth Circuit declined to consider any objection to the warrant because counsel did not file any objections to the Report and Recommendation ("R&R") of the Magistrate Judge recommending that the motion to suppress be denied. Petitioner now appears to claim that the failure to file objections to the R&R was ineffective assistance of counsel because he has a meritorious claim that the affidavit did not establish probable cause for the search of his residence.

Once a search warrant has been issued, "great deference" is due when reviewing a judicial officer's determination of probable cause. *United States v. Calloway*, 116 F.3d 1129, 1132 (6th Cir.) (absent clear error, magistrate judge's determination of probable cause must not be reversed), *cert. denied*, 522 U.S. 925 (1997). Probable cause to search is established if there

is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illnois v. Gates*, 462 U.S. 213, 238 (1983). "The probable cause requirement . . . is satisfied if the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense has been committed and that evidence thereof would be found on the premises to be searched." *United States v. Besase*, 521 F.2d 1306, 1307 (6th Cir. 1975).

Probable cause may be established through information from any reliable source or sources. *Draper v. United States*, 358 U.S. 307, 313 (1959). Knowledge of illegal activities obtained by law enforcement officers through a confidential informant and substantiated by independent surveillance supports a probable cause determination. *United States v. Jones*, 159 F.3d 969, 974 (6th Cir. 1998).

An affidavit in support of a search warrant must describe the relationship between the criminal conduct, the items to be seized and the place to be seized. "[W]hether a sufficient nexus has been shown to a particular location turns in part on the type of crime being investigated, the nature of the things to be seized, the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places." *United States v. Savoca*, 761 F.2d 292, 298 (6th Cir.) *cert. denied*, 474 U.S. 852 (1985).

As the Magistrate Judge points out in his R&R, "the affidavit states an abundance of probable cause to believe that Mr. Davis was trafficking in large quantities of cocaine and methamphetamine," [Doc. 64 at 4]. Petitioner apparently does not assert otherwise; he simply claims that the probable cause was insufficient to support the warrant for his residence. Yet, the affidavit recited that Gonzales and Fachorn, known drug dealers, had been extended guests, and/or were currently guests, at petitioner's residence; that Davis was reported to have been gathering

currency for the purchase of ten (10) kilograms of cocaine; and that Gonzales was followed to Davis's residence after a meeting with a confidential informant and Fachorn to discuss the anticipated sell of drugs to Davis. When coupled with Templeton's experience that proceeds and records related to drug trafficking were often kept at dealer's residences, ample probable cause existed for the issuance of the warrant to search petitioner's residence.

In addition, as petitioner acknowledges, there is an "ever-growing list" of cases supporting an inference that a drug dealer keeps evidence of his wrongdoing in his residence. *United States v. MacPhearson*, 469 F.3d 518 (6th Cir. 2006); *United States v. Miggins*, 302 F.3d 384, 393-94 (6th Cir.) (holding that although defendant, a known drug dealer, was arrested with drugs at another location there was sufficient nexus to establish probable cause for a search of his residence), *cert. denied*, 537 U.S. 1130 (2002); *United States v. Davidson*, 936 F.2d 856 (6th Cir. 1991) ("In the case of drug dealers, evidence is likely to be found where the dealers live."). Counsel's failure to file an objection to the Magistrate Judge's R&R was not deficient.

### 5. Safety Valve

On June 2, 2010, petitioner moved to amend his § 2255 motion "to allege that trial and sentencing counsel failed to adequately advocate and advise petitioner Davis relative to 'safety-valve' consideration," [Doc. 193]. The Court granted the motion to amend on June 3, 2010, [Doc. 195].

The government first argues that the amended motion is untimely. Section 2255 petitions are subject to a one-year statute of limitations. 28 U.S.C. § 2255(f). Petitioner does not argue that his amendment was filed within one year of the date on which his judgment became final but argues that his amendment meets the "relation back requirement of Federal Rule of Civil

Procedure 15(c) because the amendment arises out of the same conduct, transaction, or occurrence set forth in his original § 2255 motion." Federal Rule of Civil Procedure 15(c) provides, in pertinent part, that relation back is permitted when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B).[3]

In *Mayle v. Felix*, 545 U.S. 644 (2005), the Supreme Court rejected a broad reading of "conduct, transaction, or occurrence" when determining whether an amended habeas petition relates back to the original petition. The Supreme Court held that an amended petition does not relate back under Federal Rule of Civil Procedure 15(c) and thereby avoid the statute of limitations "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id*. at 650. In other words, "relation back depends on the existence of a common 'core of operative facts' uniting the original and the newly asserted claims." *Id*. at 658 (citations omitted). Although the petition in *Mayle* involved a challenge to a state conviction under 28 U.S.C. § 2254, the court finds the analysis also applies to post-conviction motions challenging federal convictions under 28 U.S.C. § 2255. *See Steverson v. Summers*, 258 F.3d 520, 523 n.4 (6th Cir. 2001) ("Title 28 U.S.C. § 2255 is essentially equivalent to § 2254 . . .").

Thus, if an "amendment [is] offered for the purpose of adding to or amplifying the facts already alleged in support of a particular claim," the amendment relates back to the date of the original petition. *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002) (applying Federal Rule of Civil Procedure 15(c) to motion to amend § 2255 motion). However, if a movant seeks to

---

[3] Although the Governing Rules do not specify a procedure for amended motions, courts have typically applied Federal Rule of Civil Procedure 15 to the amendment of a § 2255 motion. *See Oleson v. United States*, 27 Fed. App'x 566, 571 (6th Cir. 2001).

"introduce a new legal theory based on facts different from those underlying the timely claims," the amendment should not relate back and should therefore be time barred. *Id*. Here, although petitioner's original § 2255 motion alleges that trial counsel failed to adequately advise petitioner Davis relative to entering into plea negotiations, that claim appears to be a completely different claim from the one raised in the amended petition, that is, that counsel failed to adequately advocate and advise Davis relative to safety valve consideration. The two claims do not arise from a common core of operative facts and the claims differs in both time and type. The Court thus concludes that the amended petition is time barred.

In the alternative, Davis asks the Court to find that equitable tolling is appropriate in this case. The one year statute of limitations in § 2255 is subject to equitable tolling. *Solomon v. United States*, 467 F.3d 928, 935 (6th Cir. 2006). Petitioner asserts that there has been "no undue delay in filing this request or any bad faith" and he has "been pursuing his rights diligently." [Doc. 220 at 3].

"[T]he doctrine of equitable tolling is applied sparingly by federal courts" and is typically used only when "a litigant's failure to meet a legally mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010); *Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003). Until recently, the Sixth Circuit used a five-factor inquiry to determine whether a habeas petitioner was entitled to equitable tolling. *See Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001). The Supreme Court's decision in *Holland v. Florida*, -- U.S-- , 130 S.Ct. 2549 (2010), however, replaced the five-factor inquiry with a two part test, under which a habeas petitioner is entitled to equitable tolling only if the petitioner shows that (1) "he has been pursuing his rights diligently," and (2) "some extraordinary

circumstance stood in his way and prevented timely filing." *Hall v. Warden, Lebanon Corrr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011) (citing *Holland*, 130 S.Ct. at 2562).

Davis makes no effort to identify any extraordinary circumstances which prevented his timely filing nor does he, except in conclusory fashion, make any effort to show that he has been diligently pursuing his rights. Under these circumstances, the Court cannot find that equitable tolling applies to relieve the petitioner from filing his amended motion within the applicable statute of limitations.

Even if not time barred, however, petitioner's claim of entitlement to safety valve relief is unconvincing. The federal sentencing statutes permit the imposition of a sentence below a relevant statutory minimum sentence in only two circumstances. One is where the defendant meets all of the requirements of the safety valve, 18 U.S.C. § 3553(f)(1)--(5). Here, only two of the five requirements are at issue: (1) that the defendant not "possess a firearm or other dangerous weapon . . . in connection with the offense, 18 U.S.C. § 3553(f)(2); USSG § 5C1.2(a)(2); and (2) that, not later than the time of the sentencing hearing, the defendant has truthfully provided to the government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . ." 18 U.S.C. § 3553(f)(5).

During the search of petitioner's residence, officers discovered a loaded .25 caliber pistol in close proximity to digital scales containing cocaine residue and the bag containing the $71,000 cash to be used for the purchase of cocaine. Although Davis did not admit to possession of the firearm, which Shaffer claimed to be hers, petitioner's constructive possession of the firearm is conclusively established here, as found by the Sixth Circuit. Thus, the only real question here is whether or not the firearm was possessed in connection with the offense. Petitioner appears to make

two arguments that it was not. First, he asserts that neither the probation officer nor the Court applied a guidelines enhancement under USSG § 2D1.1(b)(1) because "a dangerous weapon (including a firearm) was possessed." Second, he notes that he was found not guilty by the jury of the charge of possession of a firearm in furtherance of his drug trafficking offense, Count Four. Neither of these arguments is dispositive on the question.

The commentary to the Guidelines Manual indicates that "the adjustment [of § 2D1.1(b)(1)] should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." USSG § 2D1.1 application note 3. The Sixth Circuit has held that once it is shown by a preponderance of the evidence that the defendant actually or constructively possessed the weapon during the commission of the offense, a presumption is raised that such possession was connected to the offense. *United States v. Moses*, 289 F.3d 847, 850 (6th Cir. 2002). Once the government establishes that the defendant was in possession of a firearm, the burden shifts to the defendant to show that "it was clearly improbable that the weapon was connected to the offense." *Id.* (citing USSG § 2D1.1 application note 3). The fact that the increase in offense level provided for under § 2D1.1(b)(1) was not applied in petitioner's guidelines calculation in this case is largely irrelevant; it certainly could have been. Given the circumstances described above where the firearm was located within close proximity to cocaine residue, tools of the drug trade, and a large sum of cash to be used in the purchase of a large quantity of cocaine, the petitioner simply could not have met his burden of proving that "it was clearly improbable that the weapon was connected to the offense."

Even if the government were required to prove, by a preponderance of the evidence, that the firearm was connected to the offense, it could easily have done so under these

circumstances. It is clearly established in this record that Davis did in fact possess a firearm in connection with the underlying drug offense. Further, it is absolutely irrelevant that Davis was found not guilty by the jury of possession of a firearm in connection with the drug trafficking offense. The fact that the jury found him not guilty of that offense, when applying a beyond a reasonable doubt standard, does not mean that it could not be shown by a preponderance of the evidence that he possessed a firearm in connection with the offense. In other words, one does not prove the other.

Finally, Davis has not shown that he could have met the fifth requirement for safety valve relief either. Although he presumably sets out in detail in his sealed affidavit what he would have told the government during a debriefing, his version of the facts in the case differ significantly from those established through the trial proof and it is highly unlikely that the Court would ever have found that such an account constituted a truthful debriefing. More fundamental, however. is the failure of Davis to assert, in any of his declarations, that he was willing to truthfully provide to the government all information he had concerning the offense or offenses that were part of the same course of conduct or a common scheme or plan.

In short, Davis has failed to allege facts which show his entitlement to safety valve relief and, indeed, the record conclusively establishes that he was not entitled to such relief. *Strickland*'s standard is not met here and this issue, like the others, lacks merit.

## B. Violation of Government's *Brady* Obligation

At trial, Fachorn, during his direct examination, was asked whether he knew Davis or had ever been to the Bristol-Johnson City area before. He answered that he knew Davis only "through Al [Gonzales]" and that he had not been to the Bristol-Johnson City area before February, 2006.

Petitioner has submitted the affidavit of Gonzales, in which Gonzales asserts that Fachorn told him, after Fachorn's testimony but before that of Gonzales, that he had never before been to Tennessee and had never met John Davis. According to Gonzales, "that testimony, to the best of [Gonzales's] knowledge, information, and belief, was false." Gonzales claims to have advised the Assistant United States Attorney that Fachorn had testified falsely about those matters. [Doc. 201-1, ¶ 6].

This, petitioner claims, establishes that the government elicited false testimony from Fachorn which the government knew to be false, never called the false testimony to the attention of the Court or defense counsel, and that, without the testimony, there is a "reasonable likelihood" that Davis would not have been convicted by the jury. Petitioner casts his claim as one in violation of the government's obligations under *Brady v. Maryland*, 373 U.S. 83, 87 (1963). A successful *Brady* claim has three requirements: favorable evidence, suppression and prejudice. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). The government's withholding of evidence does not prejudice the defendant unless "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id*. at 280.[4]

First of all, Davis cannot show that Fachorn's testimony was actually false. The best he can do is assert that "to the best of Gonzales' knowledge, information and belief," the testimony was false. Gonzales does not state in his affidavit his basis for his belief that Fachorn's testimony was false, such as asserting that Fachorn had told him the testimony was false or that Gonzales had *personal* knowledge that Fachorn had been to Tennessee previously and had met Davis. Most

---

[4] Davis does not accuse the government of the use of false or perjured testimony which would constitute a denial of due process in the case. *See United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989). He apparently does not cast his claim in such a manner because he cannot prove that Fachorn's testimony was actually false or, even if it was, that it was material and that the prosecution knew it was false at the time it was presented to the jury. *United States v. Farley*, 2 F.3d 645, 655 (6th Cir. 1993). Here, Davis does not make an allegation that the prosecution knew that the testimony was false at the time it was presented to the jury. He simply argues that the prosecutor was made aware of its falsity *after* Fachorn testified and did not disclose the matter to the Court or defense counsel.

importantly, however, even if Davis could establish that the testimony was false and favorable to him and that it had been knowingly suppressed by the government, he cannot prove prejudice.

It is almost incredible for Davis to assert that being able to impeach Fachorn by showing that two relatively insignificant and immaterial pieces of testimony were false would in any way have changed the outcome of the proceeding. Testimony about whether Fachorn had ever been to Bristol, Tennessee before or whether he had met John Davis before, although asked about by the government, were in no way related to or crucial to Fachorn's description of the way in which he and Gonzales brokered the drug purchase for petitioner and does not, in any appreciable degree, call into question the credibility of Fachorn's testimony about the brokering of the deal itself. The evidence was not "crucial" to Davis's case and would not plausibly have exonerated him. Davis has not shown any reasonable probability that an earlier disclosure would have altered the trial's outcome and his *Brady* claim fails.

### IV. Conclusion

For the reasons set forth above, the Court holds petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States. Accordingly, his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be DENIED and his motion DISMISSED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a

reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id.*

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Having examined the petitioner's claim under the *Slack* standard, the Court finds that reasonable jurists could not find that this Court's dismissal of petitioner's claims was debatable or wrong. Therefore, the Court will deny petitioner a certificate of appealability.

A separate judgment will enter.

So ordered.

ENTER:

<u>s/J. RONNIE GREER</u>
UNITED STATES DISTRICT JUDGE